Jason Leonard, SBN 018067
MORGAN & MORGAN, P.A.
12800 University Drive, Suite 600
Fort Myers, FL 33907
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
jleonard@forthepeople.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT COURT OF ARIZONA

FREDERICK FREEDMAN, on behalf of himself and those similarly situated,

Plaintiff,

vs.

SUPERSHUTTLE ARIZONA, INC., D/B/A EXECUCAR, AN ARIZONA CORPORATION, D/B/A EXECUCAR AND VEOLIA TRANSPORTATION, INC., A DELAWARE COPORATION,

Defendants.
_____/

CASE NO.:

**COMPLAINT**

(Jury Trial Demanded)

Plaintiff, FREDERICK FREEDMAN, on behalf of himself and those similarly situated, by and through the undersigned attorneys, sues the Defendants, SUPERSHUTTLE ARIZONA, INC., d/b/a ExecuCar, an Arizona Corporation, and VEOLIA TRANSPORTATION, INC., a Delaware Corporation, and alleges:

### The Parties

1. Plaintiff was a misclassified employee of Defendants and brings this action for unpaid minimum wages, overtime compensation, liquidated damages, declaratory relief, and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (hereinafter "FLSA"). Additionally, Plaintiff seeks a declaration of rights pursuant to Rule 57, Fed.R.Civ.P., and the

Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

2. Plaintiff was a "unit franchise owner" driver paid by the trip who worked for Defendants within the last three years in the Phoenix, Arizona area, among other locations.

3. Defendant, SUPERSHUTTLE ARIZONA, INC., d/b/a EXECUCAR, is an Arizona Corporation that operates and conducts business in, among other locations, Phoenix, Arizona and is therefore, within the jurisdiction of this Court.

4. Defendant, VEOLIA TRANSPORTATION, INC., is a Delaware Corporation that operates and conducts business in, among other locations nationwide, Phoenix, Arizona and is therefore, within the jurisdiction of this Court.

## Jurisdiction

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, and the authority to grant declaratory relief under the FLSA pursuant to 28 U.S.C. §2201 et seq.

6. This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendants in the state of Arizona.

7. The illegal conduct complained of and the resultant injury occurred within the judicial district in and for Phoenix, Arizona.

8. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391(c).

## FLSA Coverage

9. This action is brought under the FLSA to recover from Defendants minimum wages, overtime wages, liquidated damages, and reasonable attorneys' fees and costs.

10. At all material times relevant to this action, Defendants were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s), in that Defendants had two or more

employees engaged in interstate commerce and Defendants earned over $500,000 in gross sales yearly.

11. Additionally, for FLSA coverage only, Plaintiff was engaged in interstate commerce during his employment with Defendants.

## General Allegations

12. Defendants collectively own and operate a business enterprise called "ExecuCar" which provides transportation services for customers in approximately 28 locations throughout the United States. *See* www.execucar.com/Locations.aspx

13. Defendants require its ExecuCar drivers to enter into contractual agreements with Defendants, or their affiliated subsidiaries, which designate each driver as independent contractors or "unit franchise owners" rather than employees.

14. As a result of Defendants classifying its ExecuCar drivers as independent contractors, Defendants do not pay their ExecuCar drivers overtime compensation and do not guarantee their drivers are paid the minimum wage each week.

15. Plaintiff, who worked for Defendants from 2002, executed one of these contracts with Defendant, SUPERSHUTTLE ARIZONA, INC., on December 11, 2009.[1] A true and correct copy of that agreement is attached as Exhibit "A."[2]

16. Plaintiff executed similar contracts with Defendants previously that were similar in form and substance, but does not have copies of those agreements.

17. Since becoming an ExecuCar driver in 2002 and to the end of his employment in

---

[1] The contract is dated December 11, 2010; however, this appears to be a scrivener's error since Plaintiff did not work for Defendants in December 2010. Furthermore, the notarization on page 39 is dated November 25, 2009, indicating Plaintiff most likely signed this document on December 11, 2009.
[2] Plaintiff, and those similarly situated drivers, are not bringing this lawsuit pursuant to any unit franchise agreement, but are filing this lawsuit to recovery statutory wages not paid to them as a result of Defendants' misclassification of the drivers' employment status.

3

2010, each Defendant exercised control over Plaintiff and those similarly situated drivers (giving them directions, administering policies for the drivers to follow) and are thus considered Plaintiff's employer under the FLSA.

18. During their employment with Defendants, Plaintiff and those similarly situated drivers were classified as independent contractors.

19. Even though Defendants classified Plaintiff and those similarly situated drivers as independent contractors, the economic reality of the relationship is that Defendants treated Plaintiff and those similarly situated drivers like employees and that these individuals were economically dependent upon Defendants.

20. Since Plaintiff and those similarly situated drivers were misclassified as independent contractors, Plaintiff and those similarly situated drivers were not paid the proper minimum wage for each hour worked within a work week and were not paid overtime compensation for overtime hours worked each week.

21. At all times relevant to this action, Defendants failed to comply with 29 U.S.C. §§201-209, because Plaintiff and those similarly situated drivers performed driving services for Defendants for which no provisions were made by Defendants to ensure that Plaintiff and those similarly situated drivers were paid the minimum wage for each hour worked within a work week, or that they were paid overtime compensation for each overtime hour worked.

22. Plaintiff regularly worked approximately 60-70 hours per week, all without a minimum wage guarantee or receipt of any overtime compensation.

23. Defendants maintained extensive control over Plaintiff and those similarly situated drivers while they worked for Defendants.

24. Defendants maintained exclusive control over the "system" fee amounts Plaintiff

and those similarly situated drivers were required to pay Defendants.

25. Defendants maintain exclusive control over the "revenue sharing" fee that Plaintiff and those similarly situated drivers were required to pay Defendants.

26. Defendants maintain exclusive control over the airport fees and other fees charged to Plaintiff and those similarly situated drivers.

27. Plaintiff and those similarly situated drivers had no opportunity or power to negotiate these fees described above with Defendants.

28. Defendants assigned work schedules to Plaintiff and those similarly situated drivers.

29. Defendants would direct Plaintiff and those similarly situated drivers to pick up certain customers of Defendants.

30. Defendants set the rates and fares that passengers pay to Defendants for the transportation provided by Plaintiff and those similarly situated drivers.

31. Defendants negotiated discounted rates and fare amounts with local hotels and attractions to charge passengers.

32. Plaintiff and those similarly situated drivers did not negotiate these discounted rates and fares paid by passengers.

33. Defendants also would not reimburse Plaintiff and those similarly situated drivers for the difference between the established rate and the discounted rate set by Defendants.

34. Defendants required Plaintiff and those similarly situated drivers to transport these passengers at the discounted rates.

35. Defendants would direct Plaintiff and those similarly situated drivers to perform maintenance on their vehicles.

36. If Plaintiff and those similarly situated drivers did not complete the requested

maintenance, they were not allowed to transport passengers and Defendants would not assign any passengers to Plaintiff and those similarly situated drivers.

37. Defendants also required Plaintiff and those similarly situated drivers to follow manuals detailing mandatory specifications, standards, operating procedures and rules.

38. During their employment with Defendants, Plaintiff and those similarly situated drivers were not allowed to transport passengers for competitors of Defendants.

39. In fact, Plaintiff's agreement with Defendants states that Plaintiff can be immediately terminated with no opportunity to cure if he enters into an employment relationship or other affiliation with a business that competes with Defendants. *See* Exhibit A, Section 11(A)(23).

40. Customers of Defendants usually pre-paid for their transportation through Defendants system, and not through Plaintiff and those similarly situated drivers.

41. Defendants maintained control over the form of payment accepted from customers.

42. Defendants required Plaintiff and those similarly situated drivers to abide by a dress code.

43. Defendants required Plaintiff and those similarly situated drivers to abide by all laws, ordinances, and regulations.

44. Defendants would assign Plaintiff and those similarly situated drivers to "stands" where they would wait for Defendants to direct them to transport passengers.

45. Plaintiff and those similarly situated drivers were not allowed to leave these "stands" without permission from Defendants.

46. Defendants tracked Plaintiff and those similarly situated drivers with GPS during his employment.

47. If needed, Defendants could locate Plaintiff and those similarly situated drivers with

GPS during their employment.

48. Defendants could notify Plaintiff and those similarly situated drivers if they had been caught "speeding" by the GPS system.

49. Defendants utilized the GPS system to know where Plaintiff and those similarly situated drivers were located.

50. Plaintiff and those similarly situated drivers were not allowed to pick up random, unassigned passengers.

51. Defendants provided automobile insurance to Plaintiff and those similarly situated drivers in exchange for required payments from them.

52. Defendants negotiated the automobile insurance coverage and premium amounts charged to Plaintiff and those similarly situated drivers.

53. Plaintiff and those similarly situated drivers were not allowed to utilize different automobile insurance coverage than the insurance coverage negotiated and approved by Defendants.

54. Plaintiff and those similarly situated drivers were not involved in the negotiation of automobile insurance coverage or premium amounts for his own insurance.

55. The additional persons who may become plaintiffs in this action are similarly situated drivers who were misclassified as independent contractors and who worked in excess of forty (40) hours during one or more work weeks during the relevant time periods but who did not receive pay at one and one-half times their regular rate for their hours worked in excess of forty (40) hours, or did not receive minimum wages in some weeks.

56. Upon information and belief, the records, to the extent any exist, concerning the number of hours worked and amounts paid to Plaintiff and those similarly situated drivers, are in the

7

possession and custody of Defendants.

## COUNT I - RECOVERY OF OVERTIME COMPENSATION

57. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-56 above.

58. Plaintiff and those similarly situated drivers were entitled to be paid time and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week.

59. During their employment with Defendants, Plaintiff and those similarly situated drivers were misclassified as independent contractors and worked overtime hours but were never paid time and one-half overtime compensation for same.

60. As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiff and those similarly situated drivers time and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week in one or more work week, Plaintiff and those similarly situated drivers have suffered damages plus incurring reasonable attorneys' fees and costs.

61. As a result of Defendants' willful violation of the FLSA, Plaintiff and those similarly situated drivers are entitled to liquidated damages.

62. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff, FREDERICK FREEDMAN, on behalf of himself and those similarly situated, demands judgment against Defendants for the payment of all overtime hours at one and one-half the regular rate of pay for the hours worked by him for which Defendants did not properly compensate him, liquidated damages, reasonable attorneys' fees and costs incurred in this action, declaratory relief, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II - RECOVERY OF MINIMUM WAGES (FEDERAL)

63.     Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-56 above.

64.     Plaintiff and those similarly situated drivers were entitled to be paid minimum wages for each hour worked during their work with Defendants.

65.     Plaintiff and those similarly situated drivers worked numerous hours per week for Defendants, but many times did not receive enough compensation to make an hourly rate which satisfied the minimum wage.

66.     As a result of Defendants' actions in this regard, Plaintiff and those similarly situated drivers have not been paid the minimum wage for each hour worked during at least one or more weeks of employment with Defendants.

67.     Defendants willfully failed to pay Plaintiff and those similarly situated drivers minimum wages for one or more weeks of work contrary to 29 U.S.C. § 206.

68.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and those similarly situated drivers have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

69.     Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff, FREDERICK FREEDMAN, on behalf of himself and those similarly situated, demands judgment against Defendants for proper minimum wages, an additional and equal amount of liquidated damages, reasonable attorneys' fees and costs incurred in this action, declaratory relief, and any and all further relief that this Court determines to be just and appropriate.

## COUNT III – DECLARATORY RELIEF

70. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-56 above.

71. Plaintiff and Defendants have a pending dispute under the Fair Labor Standards Act, which the Court has jurisdiction to hear pursuant to 28 U.S.C. § 1331.

72. The Court also has jurisdiction to hear Plaintiff's request for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201-2202.

73. Plaintiff may obtain declaratory relief.

74. Defendants, SUPERSHUTTLE ARIZONA, INC., d/b/a ExecuCar, an Arizona Corporation, and VEOLIA TRANSPORTATION, INC., a Delaware Corporation, employed Plaintiff and those similarly situated drivers.

75. Defendants failed to pay Plaintiff for overtime hours worked and in some weeks failed to pay Plaintiff wages that met the applicable minimum wage.

76. Plaintiff is entitled to overtime pursuant to 29 U.S.C. § 207 and minimum wages pursuant to 29 U.S.C. § 206.

77. Defendants did not keep accurate time records pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

78. Defendants did not rely upon a good faith defense in their decision to classify Plaintiff and those similarly situated drivers as independent contractors and to fail to pay these individuals overtime wages or proper minimum wages.

79. Plaintiff is entitled to an equal amount of liquidated damages.

80. It is in the public interest to have these declarations of rights recorded.

81. Plaintiff's declaratory judgment action serves the useful purpose of clarifying and

settling the legal relations in issue.

82. The declaratory judgment action terminates and affords relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

83. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff, FREDERICK FREEDMAN, demands a declaration of rights finding that an employer-employee relationship existed, that Plaintiff worked hours over forty in a workweek without receiving correct overtime pursuant to the FLSA, that Plaintiff was not paid the minimum wage each week by Defendants, that Defendants failed to keep accurate time records, that Defendants have a legal duty to pay Plaintiff proper compensation pursuant to the FLSA, that Defendants failed to prove a good faith defense, and that Plaintiff is entitled to proper compensation, liquidated damages and reasonable attorneys' fees pursuant to the FLSA.

Dated this 12th day of April, 2011.

Jason Leonard, Esq
Arizona Bar No. 018067
E-mail: jleonard@forthepeople.com
Morgan & Morgan, P.A.
12800 University Drive, Suite 600
Fort Myers, Florida 33907
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Attorneys for Plaintiff